**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LAMONT ANDRE YOUNG, | |
| Plaintiff, | Civil Action No. 14-2129 (BAH) |
| v. | Judge Beryl A. Howell |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

The plaintiff, Lamont Andre Young, alleges that the defendants, the District of Columbia

and D.C. Metropolitan Police Department ("MPD") Officer Thurman Powell, violated the

plaintiff's constitutional and common law rights when, in 2013, MPD Officers stopped the

plaintiff, shot him in the back, and then restrained him with shackles and a belly chain during

hospital treatment. *See generally* Compl., ECF No. 1. The defendants have moved for partial

dismissal of the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot.

Dismiss Compl. ("Defs.' Mot.") at 1, ECF No. 5; Defs.' Mem. Supp. Mot. Dismiss ("Defs.'

Mem.") at 4, ECF No. 5; Def. Powell's Mot. Partial Dismissal of Compl. ("Def. Powell's Mot.")

at 1, ECF No. 12; Def. Powell's Mem. Supp. Mot. Dismiss ("Def. Powell's Mem.") at 3, ECF

No. 12; Defs.' Reply Pl.'s Opp'n Mot. Dismiss ("Defs.' Reply"), at 1 n.1, ECF No. 11 (noting

that "the Defendants' motion to dismiss should now be deemed a motion for partial dismissal").[1]

For the reasons set forth below, the defendants' motions are granted in part and denied in part.

---

[1] The defendants initially moved "for dismissal of the complaint or in the alternative for summary judgment," Defs.'
Mot. at 1, but did not cite the appropriate Federal Rule of Civil Procedure, namely, Rule 56, or otherwise argue for
summary judgment.

## I.    BACKGROUND

As alleged in the Complaint, the plaintiff, who is currently incarcerated, Compl. ¶ 3,[2] was standing near the front of 3218 22nd Street, SE, in Washington, D.C. on December 27, 2013, when MPD officers approached him, *id*. ¶ 9–10.  Even though the plaintiff was unarmed, did not run from the police, did not strike or injure any law enforcement officer, "did not pose a threat," and "raised both hands into the air," he was "shot in the back" by defendant Powell and "suffered a gunshot wound."  *Id*. ¶¶ 12–19.

After being shot, the MPD officers handcuffed and searched the plaintiff and arranged for him to be taken by ambulance to the hospital.  *Id*. ¶¶ 20–21.  While the plaintiff was in the hospital being treated for the gunshot wound that resulted in "an injury to his kidney . . . [and] liver, acute blood loss, hemothorax, systemic inflammatory response syndrome, a rib fracture, pleural effusion, a lung injury, an open wound to his back, hypopotassemia and emotional distress," *id*. ¶ 22, he was restrained "in shackles and a belly chain," *id*. ¶ 23.

Almost one year later, on December 16, 2014, the plaintiff filed his Complaint alleging in seven counts against both defendants that (1) they violated his Fourth Amendment rights, under 42 U.S.C. § 1983, by seizing him without probable cause and using excessive force, *id*. ¶¶ 24–31 (Count I), and his Eighth Amendment rights, under 42 U.S.C. § 1983, by engaging in cruel and unusual punishment in handcuffing him, ordering him to remain on the ground, and restraining him in shackles and a belly chain after he had been shot, *id*. ¶¶ 32–34 (Count II); and (2) they are liable under common law claims of assault and battery for shooting him and using excessive force, *id*. ¶¶ 35–46 (Counts III and IV), negligent failure to properly train and supervise defendant Powell, *id*. ¶¶ 47–55 (Count V), and both intentional and negligent infliction of

---

[2] The record does not reflect the conviction for which the plaintiff is currently incarcerated or whether that conviction is related in any way to the incident underlying the instant suit.

emotional distress, *id.* ¶¶ 56–64 (Counts VI and VII).  Pending before the Court are the defendants' motions to dismiss the constitutional claims in Counts I and II against the District of Columbia, the constitutional claim in Count II against defendant Powell, and the common law claim in Count IV of use of excessive force against both defendants.  Defs.' Mot. at 1–2; Def. Powell's Mot. at 1.[3]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original; internal quotation marks and citation omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  The Supreme Court has cautioned that although "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

A claim is facially plausible when the plaintiff pleads factual content that is more than "merely consistent with a defendant's liability," and "allows the court to draw the reasonable

---

[3] The defendants initially sought dismissal of the claims against defendant Powell for insufficient service, under Rule 12(b)(5), Defs.' Mot. at 1, but subsequently withdrew this part of their motion since the plaintiff properly served this defendant on February 3, 2015, *see* Defs.' Reply at 1 n.1 (noting that this portion of the original motion "is now moot"); Pl.'s Mem. Opp'n to Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 1 n.1, ECF No. 10.  Accordingly, this portion of the defendants' motion to dismiss will be denied as moot.

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted); *see also Rudder v.*

*Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Although "detailed factual allegations" are not

required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and

conclusions" or a "formulaic recitation of the elements of a cause of action" to provide

"grounds" of "entitle[ment] to relief," *Twombly*, 550 U.S. at 555 (alteration in original), and

"nudge[] [the] claims across the line from conceivable to plausible," *id*. at 570.  Thus, "a

complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (second alteration in

original).  In considering a motion to dismiss for failure to plead a claim for which relief can be

granted, the court must consider the complaint in its entirety, accepting all factual allegations in

the complaint as true, even if doubtful in fact.  *Twombly* at 555; *Sissel v. U.S. Dep't of Health &*

*Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014) (in considering Rule 12(b)(6) motion, the "court

assumes the truth of all well-pleaded factual allegations in the complaint and construes

reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept

the plaintiff's legal conclusions as correct" (internal citations omitted)).  In addition, courts may

"ordinarily examine" other sources "when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc.*, 551 U.S. at 322; *see also English v. District of*

*Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013).

## III.    DISCUSSION

The defendants concede that the plaintiff "has successfully pled Fourth Amendment

claims against Defendant Powell as well as assault and battery claims against Officer Powell and

4

the District of Columbia," in Counts I and III, respectively, Defs.' Reply at 1 n.1, but challenge

three of the seven claims in the Complaint.[4]  Specifically, in a joint motion to dismiss and in

defendant Powell's motion for partial dismissal, the defendants contend that (1) defendant

Powell "is entitled to qualified immunity as to Plaintiff's Eighth Amendment claim," in Count II,

Defs.' Mot. at ¶ 3; Def. Powell's Mot. at ¶ 2; (2) the District of Columbia is entitled to dismissal

of the constitutional claims, under 42 U.S.C. § 1983, against the municipality, in Counts I and II,

Defs.' Mot. at ¶ 4; and (3) since the plaintiff's common law claim of "excessive force" in Count

IV is duplicative of the assault and battery claim in Count III, the former claim should be

dismissed, *id.* at ¶ 5; Def. Powell's Mot. at ¶ 3.[5]  The defendants' challenges to the Complaint

are addressed *seriatim* below.

### A.   QUALIFIED IMMUNITY BARS CONSTITUTIONAL CLAIM IN COUNT II AGAINST DEFENDANT MPD OFFICER

In Count II of the Complaint, the plaintiff alleges that the manner in which the defendants

restrained him after he was shot, including during his hospital treatment, constituted cruel and

unusual punishment in violation of the Eighth Amendment.  Compl. ¶¶ 33–34.  Specifically, the

plaintiff cites the following actions by the defendants after he was shot:  he "was handcuffed and

searched and ordered to remain on the ground" and was "restrained [] in shackles and a belly

---

[4] The defendants raise no challenge to the common law claims in Counts V, VI, and VII, except to urge the Court not to "exercise supplemental jurisdiction" in the event that the constitutional claims against the District and all claims against defendant Powell are dismissed.  Defs.' Mem. at 13–14.  In light of the conceded sufficiency of service and the Fourth Amendment claim against defendant Powell, the Court will continue to exercise supplemental jurisdiction over the common law claims.

[5] The defendants correctly point out that to the extent the plaintiff has asserted "claims against Defendant Powell 'in his official capacity,'" these "are in reality claims against the District of Columbia."  Defs.' Mot. at ¶ 2; Def. Powell's Mot. at ¶ 1.  The plaintiff does not dispute this issue in his opposition to either motion.  *See generally* Pl.'s Opp'n; Pl.'s Opp'n Def. Powell's Partial Mot. Dismiss ("Pl.'s Opp'n Def. Powell"), ECF No. 13. Consequently, to the extent the plaintiff is suing defendant Powell in his official capacity, the suit will be "treated as [a] suit [] against the government itself," *Sheikh v. District of Columbia*, No. 14-316, 2015 U.S. Dist. LEXIS 112, at *32 n.15 (D.D.C. Jan. 5, 2015) (alterations in original) (quoting *Herrion v. Children's Hosp. Nat'l Med. Ctr.*, 786 F. Supp. 2d 359, 367 (D.D.C. 2011), *aff'd*, 448 F. App'x 71 (D.C. Cir. 2011)), and such official capacity claims against defendant Powell will be dismissed as duplicative, *see Flythe v. District of Columbia*, 994 F. Supp. 2d 50, 75 (D.D.C. 2013).

chain while he was in the hospital being treated for his injuries." *Id*.  The defendants seek dismissal of Count II against defendant Powell on grounds that this MPD Officer "enjoys qualified immunity as to this claim," Defs.' Mem. at 9, "because the law regarding the handcuffing of arrestees who have been shot and shackling them in the hospital during treatment was not clearly established at the time of the incident in question," *id*. at 11.  The plaintiff counters that "this court should not consider the defendants' claim of qualified immunity at this stage of the litigation because it is an affirmative defense" and may "be raised in an answer." Pl.'s Opp'n at 7; Pl.'s Opp'n Def. Powell at 2 (incorporating "previously filed opposition in its entirety").[6]

"Qualified immunity exists to protect officers 'from undue interference with their duties and from potentially disabling threats of liability.'" *Lash v. Lemke*, No.13-5308, 2015 U.S. App. LEXIS 8011, at *6 (D.C. Cir. May 15, 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).  Since qualified immunity is "an *immunity from suit* rather than a mere defense to liability[,] . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).  Thus, contrary to the plaintiff's contention, a court must "resolv[e] immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

---

[6] The plaintiff also argues that motions to dismiss under Rule 12(b)(6) are "[g]enerally [d]isfavored," relying on the lenient standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "[a] complaint should not be dismissed unless the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Pl.'s Opp'n at 3. The *Conley* "no set of facts" standard was abrogated, however, in *Twombly*, which established the current standard for 12(b)(6) motions and made clear that dismissal of cases on such motions is not "disfavored" when the plaintiff fails to make "[f]actual allegations [specific] enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see also Jones v. Horne*, 634 F.3d 588, 596 n.4 (D.C. Cir. 2011) (noting that the Supreme Court has "abrogated the Conley formulation in [*Twombly*]").  Consequently, the plaintiff's reliance on pre-*Twombly* case law and standards for evaluating the sufficiency of complaints in opposition to the defendants' motions to dismiss is misplaced.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This protection is afforded to government officials whether their "error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks omitted); *see also Brinegar v. United States*, 338 U.S. 160, 176 (1949) ("Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.").

"Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (alterations and internal quotation marks omitted). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step analysis for resolving government officials' qualified immunity defense. First, a court must determine whether "the facts alleged show [that] the officer's conduct violated a constitutional right." *Id.* at 201. If the plaintiff satisfies this initial inquiry, the court then determines whether the right at issue was clearly established at the time of the alleged misconduct. *Id.; see also Fenwick v. Pudimott*, 778 F.3d 133, 137 (D.C. Cir. 2015) ("To defeat a defense of qualified immunity, a plaintiff must show not only that an official 'violated a constitutional right' but also that 'the right was clearly established' at the time of the violation."). The sequence of this two-pronged analysis is no longer mandatory, and now "lower courts have discretion to decide which

of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citing *Pearson*, 555 U.S. at 236); s*ee also Pudimott*, 778 F.3d at 137.

As to the first prong of the *Saucier* analysis, the defendants correctly note that the plaintiff's reference to an Eighth Amendment violation is misplaced since the prohibition against cruel and unusual punishment generally applies only to the terms and conditions of criminal punishments and not to pretrial detainees, such as the plaintiff at the time of the incident.  Defs.' Mem. at 9 (citing *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.")).  Therefore, the allegations in Count II are appropriately construed as a claimed violation of substantive due process under the Fifth Amendment.  *See Bell v. Wolfish,* 441 U.S. 520, 537 n.16 (1979) (noting that challenge to confinement conditions of pretrial detainee were properly analyzed under "the Due Process Clause rather than the Eighth Amendment"); *Ali v. Rumsfeld*, 649 F.3d 762, 770 n.10 (D.C. Cir. 2011) ("an individual not yet convicted of a crime must challenge his treatment or the conditions of his confinement under the Due Process Clause of the Fifth or Fourteenth Amendments rather than the Eighth Amendment"); *Brogsdale v. Barry*, 926 F.2d 1184, 1187 (D.C. Cir. 1991) ("The foundation of the constitutional right is different for the two classes of plaintiffs:  the pretrial detainees must rely upon the Fifth Amendment's guarantee of due process, whereas the convicted plaintiffs must ground their claims upon the Eighth Amendment's ban on cruel and unusual punishment.") (emphasis omitted).

Nevertheless, the Eighth Amendment standard for cruel and unusual punishment may be applied to custody of a pretrial detainee—even though such detainees have not been convicted of a crime and may not be subjected to punishment in any manner—since the conditions of

confinement are comparable. *See Benjamin v. Fraser*, 343 F.3d 35, 49–50 (2d Cir. 2003). As another Judge on this Court has explained, "Courts have held that this Fifth Amendment protection is 'at least as great as' that afforded prisoners under the Eighth Amendment, and thus, they generally analyze Fifth Amendment claims brought by pretrial detainees under the same standards governing Eighth Amendment claims brought by prison inmates." *Robertson v. District of Columbia*, No. 09-1188, 2010 U.S. Dist. LEXIS 84170, at *12-13 (D.D.C. Aug. 16, 2010) (citing *Payne v. Churchich*, 161 F.3d 1030, 1041 (7th Cir. 1999) ("When the § 1983 claim is based on a jail suicide, the degree of protection accorded a detainee is the same that an inmate receives when raising an inadequate medical attention claim under the Eighth Amendment . . . .") and *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992) ("While a pretrial detainee does not enjoy protection of the Eighth Amendment, the Eighth Amendment rights of prisoners are analogous to pretrial detainees' due process rights under the Fourteenth Amendment."); *see Lesesne v. Doe*, No. 10-602, 2014 U.S. Dist. LEXIS 116192, at *7 n.2 (D.D.C. Aug. 21, 2014) (noting that pretrial detainee's "claim [was] properly brought under the Fifth Amendment Due Process Clause's independent prohibition against the deliberate indifference of government officials to the substantial medical needs of detainees"). Conditions of confinement violate the Eighth Amendment only if they (1) rise to an objective level of a "serious" deprivation and (2) result from the official's subjective "deliberate indifference." *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1360 (D.C. Cir. 1998) ("To prevail in a case alleging unconstitutional conditions of confinement [under the Eighth Amendment], a prisoner must show that the government official knew of and disregarded an excessive risk to inmate health or safety . . . .") (internal quotation marks and citation omitted). Hence, the inquiry under the first prong of the *Saucier* analysis is whether, to constitute a substantive due

process violation under the Eighth Amendment test, the alleged manner of restraining the plaintiff after he had been shot amounted to a serious deprivation that resulted from the official's deliberate indifference.

The defendants do not debate the inquiry raised in the first prong but skip directly to the second prong.  The D.C. Circuit has recently explained the benefits of this approach, explaining that "[d]etermining that a constitutional right exists and has been abridged by official conduct is not only difficult at times, but asks much of a court that should resolve matters on constitutional grounds only when there is no other way to do so.  In some cases, it is easier for a court to see that the claimed right, whether it exists or not, is by no means 'clearly established,'" and, thus, "to dispose of th[e] suit" by consideration of only the second prong.  *Lash*, 2015 U.S. App. LEXIS 8011, at *6-7 (internal citation omitted); *see also City of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1778 (2015) (upholding qualified immunity defense upon consideration of second prong without deciding "whether the Constitution was violated by the officers' failure to accommodate [plaintiff's] illness"); *Carroll v. Carman*, 135 S. Ct. 348, 352 (2014) (declining to decide "whether a police officer may conduct a 'knock and talk' at any entrance that is open to visitors rather than only the front door" and reversing denial of qualified immunity to police officer based on analysis under second prong that constitutional rule applied by lower court "was not beyond debate"); *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (noting, without resolving, "that federal and state courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home without a warrant while in hot pursuit of that suspect," and, therefore, reversing denial of qualified immunity to police officer based on second prong); *Pudimott*, 778 F.3d at 137 (finding case "best resolved at the second step" since "the constitutional question is far from obvious") (internal quotation marks

and citation omitted); *Ali*, 649 F.3d at 770 n.11 (noting that after *Pearson*, 129 S. Ct. at 815–16,

"a court can decide a constitutional right was not clearly established without first deciding

whether the right exists").  This approach has obvious shortcomings, since skipping to the second

prong of the *Saucier* analysis avoids clarification of the constitutional permissibility of specific

government action.  *See Johnson v. Gov't of D.C.*, No. 11-5115, 2014 U.S. App. LEXIS 14760,

at *25 (D.C. Cir. Aug. 1, 2014) (Rogers, J., dissenting from denial of rehearing en banc) (noting

"that the 'regular policy' of constitutional avoidance in aid of judicial restraint 'sometimes does

not fit the qualified immunity situation because it threatens to leave standards of official conduct

permanently in limbo'" (quoting *Camreta v. Greene*, 131 S. Ct. 2020, 2031 (2011)).  Given the

guidance from both the Supreme Court and the D.C. Circuit, however, the Court turns to the

second *Saucier* question whether the MPD officers' method of restraining the plaintiff after he

had been shot violated law that was clearly established at the time of the incident.

        With respect to the second prong, the defendants contend that "there did not exist clearly

established law regarding the use of handcuffs and the shackling of a pretrial detainee during

hospital treatment."  Defs.' Mem. at 11.  As support for dismissal of Count II against defendant

Powell on qualified immunity grounds, the defendants note that they "could find no case law in

the District of Columbia Circuit that would have served to guide Officer Powell as to this issue"

and only "divided" authority from other jurisdictions.  Defs.' Mem. at 11 (comparing *Haslar v.*

*Megerman,*104 F.3d 178, 180 (8th Cir. 1997) (finding it was "eminently reasonable" to shackle a

comatose arrestee in order to prevent possible escape) with *May v. Sheahan*, 226 F.3d 876, 884

(7th Cir. 2000) (finding plaintiff/arrestee who was shackled during hospital visit stated a claim

that his due process rights were violated).[7]  Other courts to consider this issue have concluded

---

[7] The plaintiff has offered no argument in response to the defendants' assertion of only "divided" authority. *See generally* Pl.'s Opp'n.

that the use of restraints on a detained person in a hospital setting is appropriate. *See, e.g., Hoyte v. Wagner*, 2009 U.S. App. LEXIS 2197, at *5 (3d Cir. Jan. 30, 2009) (unpublished opinion finding that use of handcuffs on pretrial detainee in the hospital, where detainee died, was neither excessive or punitive in violation of the due process since "officials have a legitimate and important security interest in restraining those in their custody while they receive off-site medical care in unsecured hospitals" and no evidence was presented that "medical personnel requested removal" of handcuffs); *Taggart v. MacDonald*, 131 F. App'x. 544, 546 (9th Cir. 2005) (unpublished opinion affirming district court's dismissal of plaintiff's claim, under 42 U.S.C. § 1983, that the defendants improperly used shackles to restrain him during his transport from the prison to the hospital, and during his hospital stay); *Harding v. City of San Francisco*, No. 10-4914, 2012 U.S. Dist. LEXIS 190822, at *36 (N.D. Cal. Dec. 23, 2012) (finding defendant officers entitled to qualified immunity on plaintiff's claim of excessive force and deliberate indifference where plaintiff was handcuffed and shackled in transport to hospital after losing finger in altercation with officers); *Allah v. Goord*, 405 F. Supp. 2d 265, 277 (S.D.N.Y. 2005) (finding no due process violation where wheelchair-bound inmate "was restrained with handcuffs while being transported in an unsafe van"); *Hamilton-El v. Frame*, No. 91-3992, 1991 U.S. Dist. LEXIS 10012, at *2 (E.D. Pa. July 17, 1991) (dismissing "as frivolous" plaintiff's claim that "his transfer to the hospital in handcuffs and shackles was cruel and unusual punishment, a violation of his rights to due process and defamation of character"). This body of case law, at a minimum, confirms the defendants' assessment that the constitutional impermissibility of the alleged conduct at issue is "far from obvious." *Pearson*, 555 U.S. at 237.

The Supreme Court has made clear that to prevail on a constitutional claim against a police officer, the plaintiff must establish that the constitutional right allegedly violated "was

clearly established at the time," *Lash*, 2015 U.S. App. LEXIS 8011, at *6 (internal quotation marks omitted), such that the officers have "fair and clear warning of what the Constitution requires," *Sheehan*, 135 S. Ct. at 1778  (quoting *al-Kidd*, 131 S. Ct. at 2080) (internal quotation marks omitted).  Support for the conclusion that a constitutional right is clearly established may be found from a "robust consensus of cases of persuasive authority," *id.* (internal quotation marks and citation omitted), "existing precedent [that]… placed the statutory or constitutional question beyond debate," *al-Kidd*, 131 S. Ct. at 2083, or possibly "a controlling circuit precedent," *Carroll*, 135 S. Ct. at 350 (assuming this possibility "for the sake of argument").  In short, as Justice Kagan observed, "[o]ur modern qualified immunity doctrine protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Heien v. North Carolina*, 135 S. Ct. 530, 541 (2014) (Kagan, J., concurring) (quoting *al-Kidd*, 131 S. Ct. at 2085).  The plaintiff has failed to meet this exacting standard in his pleading to defeat the qualified immunity defense. *See Horne*, 634 F.3d at 599 (affirming dismissal, pursuant to Rule 12(b)(6), of due process claim brought by pretrial detainee for violation of his "right while in pretrial detention to be free from restrictions that exceed those imposed on the general population" since such right "was not at the time of the prosecutor's actions 'clearly established'").

In this case, the plaintiff has not alleged that any requests from medical personnel to remove any restraints were made, let alone ignored by the police, or that the restraints applied to the plaintiff hindered his medical treatment or exacerbated any pain he suffered.  Without deciding whether the use of handcuffs and shackles on a pretrial detainee, who has been shot by the police and is being treated at the hospital, amounts to a due process violation on these bare allegations, the Court concludes that the absence of a clear legal consensus on the constitutionality of such restraints in these circumstances leads inexorably to the conclusion that

defendant Powell is entitled to qualified immunity on the claim set out in Count II.  Accordingly, the defendants' motion to dismiss Count II against defendant Powell is granted.

### B.    DISMISSAL OF CONSTITUTIONAL CLAIMS AGAINST THE MUNICIPALITY

The defendants contend that the plaintiff's constitutional claims, under Section 1983, against the District of Columbia in Counts I and II, must be dismissed because these claims "are solely based upon a theory of respondeat superior liability" stemming from the allegation that "one of its employees or agents" violated the plaintiff's rights.  Defs.' Mem. at 13.  The defendants are correct that, in a Section 1983 suit, a municipality "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original).  Instead, to succeed on a Section 1983 claim against a municipality, the plaintiff must show both a predicate violation of some right, privilege, or immunity secured by the Constitution or laws of the United States, and "that the municipality's custom or policy caused the violation."  *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 123–24 (1992)).  The defendants do not argue, nor does the Court need to address, the first prong of the test—the presence of a predicate violation—since the plaintiff has failed to put forward sufficient factual allegations to support the critical part of his claim that a custom or policy of the District of Columbia was the cause of the alleged violation.

The plaintiff relies on *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996), for the proposition that the factual allegations in his complaint of an MPD officer shooting the plaintiff in the back "when his arms were raised," combined with the allegation "that the District of Columbia failed to train Officer Thurman Powell and that the shooting amounted to the use of

excessive force," is sufficient to state a claim against the municipality.  Pl.'s Opp'n at 6.  The

plaintiff's proposition is incorrect.  At the outset, *Atchinson* was decided with explicit reference

to the *Conley* pleading standard, *see Atchinson,* 73 F.3d at 422 ("we simply ask, as required by

*Conley*, whether the complaint gives the defendants fair notice of each claim and its basis"), and

before the heightened pleading standard of *Twombly* and *Iqbal* was in effect.  Therefore, reliance

on this case to support the adequacy of the pleading of municipal liability is misplaced.  *See Bell*

*v. District of Columbia*, No. 14-299, 2015 U.S. Dist. LEXIS 21736, at *8 n.4 (D.D.C. Feb. 24,

2015) ("*Atchinson* pre-dated *Twombly* and *Iqbal*, and this court must evaluate Plaintiff's

complaint under those subsequent Supreme Court decisions, which have declared such

conclusory pleading insufficient.").

     In order to plead a "custom and policy" claim against the municipality, the plaintiff must

allege an "affirmative link," such that a municipal policy was the "moving force" behind the

constitutional violation by, for example, (1) "the explicit setting of a policy by the government

that violates the Constitution," (2) "[t]he action of a policy maker with the government," (3) "the

adoption through a knowing failure to act by a policy maker of actions by his subordinates that

are so consistent that they have become custom," or (4) "the failure of the government to respond

to a need (for example, training of employees) in such a manner as to show deliberate

indifference to the risk that not addressing the need will result in constitutional violations."

*Baker v. District of Columbia*, 326 F.3d 1302, 1306–07 (D.C. Cir. 2003) (internal quotation

marks and citations omitted).  Where "[n]one of those ways is demonstrated[,]" the municipality

cannot be held liable under Section 1983.  *Singletary v. District of Columbia*, 766 F.3d 66, 73

(D.C. Cir. 2014).

The plaintiff's barebones and conclusory allegations, which he identifies in his opposition, Pl.'s Opp'n at 5-6, to support municipal liability, are that the District of Columbia is responsible for supervising MPD Officers and establishing "policies and procedures for MPD," Compl. ¶ 4; that "Defendants were acting under the color of the laws," *id.* ¶ 6; and that "Defendants failed to properly train and supervise Officer Thurman Powell to prevent him from shooting Mr. Young," *id.* ¶¶ 49; *see also id.* ¶ 52. The complaint fails to identify any specific policy or custom, the enforcement of which caused the plaintiff's injury, or any particular deficiency in training or supervision resulting in an MPD Officer allegedly shooting an unarmed man with his hands raised. In short, the complaint sets out virtually no factual allegations that purport to show that the municipality in this case had "actual or constructive knowledge that its agents will probably violate constitutional rights." *Warren*, 353 F.3d at 39. Consequently, Counts I and II, which assert constitutional claims against the District of Columbia under Section 1983, are dismissed.

## C.    CLAIMS IN COUNTS III AND IV ARE DUPLICATIVE

The defendants argue that "Plaintiff's claim of 'excessive force' is duplicative of his assault and battery claim and should be dismissed." Def. Powell's Mem. at 9–10; Defs.' Mem. at 13. Notably, the factual allegations underlying both the assault and battery claim in Count III and excessive force claim in Count IV are virtually identical, with both claims predicated on the alleged "discharging of a gun and striking Mr. Young with a bullet," Compl. ¶¶ 36, 43, while the plaintiff "was unarmed," *id.* ¶¶ 40, 45, and the defendants' use of excessive force, *id.* ¶¶ 38 ("Defendants [sic] use of excessive force was unreasonable."), 44 ("Defendants [sic] actions exceeded reasonable bounds."). Indeed, even the plaintiff concedes that "the causes of action for assault and battery are related factually to the Section 1983 excessive force claim," Pl.'s Opp'n at 8, without any further acknowledgment of the defendants' duplicity argument.

16

As a legal matter, the defendants are correct that a claim of "excessive force during the course of an arrest states a claim for assault and battery." Defs.' Mem. at 13; *see Holder v. District of Columbia*, 700 A.2d 738, 742 (D.C. 1997) ("excessive force is a term of art denoting an act of assault or battery by law enforcement officials committed in the course of their duties") (quoting *District of Columbia v. Tinker*, 691 A.2d 57, 64 (D.C. 1997)) (internal quotation marks omitted).[8] The D.C. Court of Appeals has explained that to prove an assault and battery claim in a case involving allegations of excessive force by police officers, "the inquiry is whether the officer's conduct was reasonably necessary and thereby privileged." *Smith v. District of Columbia*, 882 A.2d 778, 787-88 (D.C. 2005). Essentially the same inquiry into the reasonableness of the police officer's actions is required for an excessive force claim. *See Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993) (noting similarity in privileged use of force defense in assault and battery claims and excessive force claims under Section 1983, because police officers have a "qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary" (internal quotation marks omitted)).

Accordingly, given the similar factual predicates underlying the claims in Counts III and IV and the overlapping legal analysis required for both claims, the plaintiff's claim for excessive force in the latter count will be dismissed.

---

[8] The Court applies the law of the forum state—in this instance, the District of Columbia—when adjudicating common law claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state. . . . There is no federal general common law."); *see also*, CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, ET AL., 19 FED. PRACTICE & PROC. JURIS. § 4520 (2d ed.) (noting *Erie* doctrine applies in non-diversity cases).

## IV.     CONCLUSION

For the foregoing reasons, the defendants' motions, ECF Nos. 5 and 12, are granted in part and denied in part.[9]   The defendants' motions are denied, as moot, as to dismissal of the claims against defendant Powell for insufficient service and granted in all other respects. Specifically, the Court dismisses (1) the constitutional claim, under 42 U.S.C. § 1983, against defendant Powell, in Count II, as barred by qualified immunity; (2) the constitutional claims, under 42 U.S.C. § 1983, against the District of Columbia, in Counts I and II, for failure to plead plausibly a custom or policy of the municipality that caused the plaintiff's injury; (3) the excessive force common law claim against both defendants, in Count IV, as duplicitous; and (4) the claims against defendant Powell "in his official capacity."

An Order consistent with this Memorandum Opinion will be issued contemporaneously. The parties are directed to file a Joint Meet and Confer Report within fourteen days of the issuance of this Order.   *See* Standing Order, ¶ 3, ECF No. 3.


Date: June 2, 2015


_____
BERYL A. HOWELL
United States District Judge

---

[9] The plaintiff's request that "this court should grant leave to amend the complaint if the court were to grant the defendants' motion to dismiss," Pl.'s Opp'n at 9–10, is denied.   While amendment of a complaint to overcome deficiencies must be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the plaintiff fails to comply with the requirement in this Circuit that "'a request for leave [to amend] must be submitted in the form of a written motion' and the motion must 'state with particularity the grounds for seeking the order [and] state the relief sought.'"   *Horne*, 634 F.3d at 603 n.7 (quoting *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 21 (D.C. Cir. 2010) (alterations in original; internal quotation marks omitted); LCvR 15.1 (requiring that a "motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended").   "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."   *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (quoting *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006)) (finding "without merit" plaintiff's argument that district court erred by denying her leave to amend the complaint when that request was expressed only in opposition to motion to dismiss) (internal quotation marks omitted).