# EXHIBIT 10



Lamont Andre Young

vs.

The District of Columbia, et al

Prepared by Joseph J. Blaettler

ECPINJ

PO Box 219
Brookside, NJ

Phone: 973-725-9677

Fax: 973-543-1218

8/15/2017

## I. Introduction

I have been retained by Jane Carol Norman of the Law Offices of Bond & Norman, LLC in the matter of Lamont Andre Young vs. District of Columbia, et al.

Mr. Young is the Plaintiff in this matter and is represented by Ms. Norman. I was requested by the firm to review the material and evidence obtained in this matter and to determine if proper police policies and procedures-- to include use of force, were followed. My resume and credentials are included with this report.

My report is based on my experience, training, and education in the field of law enforcement security, supervision, procedures, and operations. My opinions are based on a reasonable degree of certainty in this field. I reserve the right to amend and supplement this report in the event additional information and documents become available to me.

The following documents have been supplied to me by counsel for the plaintiff:
- Complaint
- Use of Force Review Board – Findings of Unjustified Force
- Metropolitan Police General Order – Police Citizen Contacts (8/30/13)
- Metropolitan Police General Order – Use of Force (10/7/02)
- Disciplinary Charges Against Officer Thurman Powell
- Trial Board Hearing (12/7/16)
- Trial Board Hearing (12/8/16)
- Trial Board Findings of Fact and Conclusions of Law
- Government Expert Witness Report – Charles J. Key (6/6/17)
- Use of Force Investigation and Attachments
- Deposition Transcript of
- Deposition Transcript of Officer Thurman Powell
- Deposition Transcript of Officer Steve Sanchez
- Deposition Transcript of Officer Courtney Flash
- Deposition Transcript of Officer Anthony Allen

1

- Photographs and Google Maps of Shooting Scene

## II. Summary of Event per Defendants

On December 27, 2013 at approximately 12:23pm Officer Allen, while on patrol in the area of the 3200 block of 22nd St. SE, observed Plaintiff Lamont Young standing in front of 3218 22nd St. SE. Plaintiff had been identified the day before (December 26, 2013) by his girlfriend Crystal Perry as having been involved in a family disturbance. When he left the home, Perry reported to police, the plaintiff took a handgun with him and made threats to law enforcement. As a result of the family disturbance call a report was filed and a 'be on the lookout' (BOLO) was issued for plaintiff. Based on the BOLO, Allen decided to make a field stop of plaintiff. Prior to making the stop Allen requested assistance. Officer Powell was the first to arrive, followed by Officers Sanchez and Flash. Once Officer Allen saw Powell arrive he exited his patrol unit and both he and Powell approached plaintiff.

Officer Allen was the first to approach plaintiff and ordered him to take his hands out of his pocket. Powell also commanded plaintiff remove his hands from his pocket. Both officers stated that plaintiff refused their commands and walked away. Both officers followed plaintiff from behind, continuing to order him to remove his hands. At some point, defendants allege that plaintiff made a furtive movement. Having reviewed the documents supplied to me by counsel for the plaintiff, the furtive movement in question has been described differently by the officers on scene and they conflict with each other.

- Powell describes the movement as reaching into his coat pocket and then jerking his hand out.[1] During depositions Powell stated plaintiff jerked as if he was pulling something from his waistband.[2]
- Allen describes the movement as jumping toward Officer Powell.[3] In a follow-up interview Powell describes the movement as turning quickly or aggressively toward Officer Powell.[4]

---

[1] Final Investigation report submitted by IAD page 6
[2] Powell Deposition Page 77
[3] Final Investigation report submitted by IAD page 8
[4] Final Investigation report submitted by IAD page 8

2

- Sanchez describes the movement as "some type of movement over his shoulder".[5] In a follow-up interview Sanchez explained the movement as plaintiff's head looking back.[6]
- Flash stated he was attempting to park his motorcycle and only heard the shot.

Based on an unclear furtive movement (with plaintiff's back turned away from the officers) Officer Powell shot plaintiff once in the back.

### III. Summary of Event per Plaintiff

Plaintiff stated that he was standing on the side of Classic Kutz barber shop waiting to get his hair cut. The police pulled up and stated 'put your hands in the air'. Plaintiff states his back was to the officer when the command was given. Plaintiff states that he placed his hands in the air and walked to the center of the street. He then reached into his pocket to retrieve his wallet and was shot in the back.[7] It should be noted that no gun was recovered from plaintiff, but a black wallet was recovered at the scene. On December 27, 2103 Agent Singletary of MPD interviewed plaintiff; during the interview plaintiff informed the agent "that he reached in his pocket with his right hand for his wallet, to get his ID, and before he got his wallet out the officer shot him in the back". (See report dated 12/27/2013 CCN IS#13-003609. O.L.A File # FIT# S-1-13-674). As per the evidence report, one black wallet was located 20'9" east of Pepco pole 807370-2494 and 7'0" south of the same pole.

### IV. Analysis of incident

Having reviewed the material supplied to me by counsel for the plaintiff, it is my opinion which I base on my training, education, experience, and knowledge of police policy and procedures that on the date Officer Powell shot plaintiff in the back he engaged in an illegal seizure and excessive use of force in violation of the 4th Amendment. Additionally, defendants violated plaintiff's 4th Amendment rights when they falsely charged him with assault on a police officer.

---

[5] Final Investigation report submitted by IAD page 9
[6] Final Investigation report submitted by IAD page 10
[7] Final Investigation report submitted by IAD page 12

3

In an effort to justify their actions, plaintiffs disregarded the constitutional cause regarding probable cause and arrested plaintiff. The United States Attorney's Office refused to prosecute based on this charge.

There is no disputing that officers are justified in using force to protect themselves and others. However, the use of force must always be reasonable.

Any force used by a police officer will be judged by the reasonableness standard. This standard was established by the United States Supreme in Graham v. Connor, 490 U.S. 386 (1989)

All uses of force in arrest and seizure of a free citizen are judged by the 4th Amendment's objective reasonableness standard.

Objective reasonableness analysis considers:

- Severity of the offense suspected.
- Did suspect pose an immediate threat to the officers or others?
- Is the suspect actively resisting or attempting escape?[i]

In this matter, none of the above existed. Plaintiff had committed no crime, did not pose an immediate threat to the officer or others and was not resisting or attempting to escape.

The objective reasonable standard is nationally recognized and included in every police use of force policy I have review. Defendants own Use of Force Policy states:

II. Policy

The policy of the Metropolitan Police Department is to value and preserve human life when using lawful authority to use force. Therefore, officers of the Metropolitan Police Department shall use the minimum amount of force that is objectively reasonable officer would use in light of the circumstances to effectively bring an incident or person under control, while protecting the lives of members or others. [ii]

The New York City Police Department uses the following definition:

OBJECTIVELY REASONABLE STANDARD - The reasonableness of the use of force is based upon the totality of the circumstances known by the MOS at the time of the use of force. The

4

Department examines the reasonableness of force viewed from the perspective of a member with similar training and experience placed into the same circumstances as the incident under investigation.[iii]

Simply stated: was the force Powell used reasonable in light of what he knew at the time he shot plaintiff in the back?

At the time of the shooting three other officers were present at the scene and not one felt threatened enough to resort to deadly force. Three other officers with similar experience and training who were involved in the same situation did not feel compelled to shoot plaintiff in the back.

During depositions Officer Sanchez, who was present on the scene standing behind Officer Powell, testified that prior to the shooting, Officer Powell stopped in his line of sight.[8] Based on Officer Sanchez's testimony, both he and Powell would have been in the same position to observe plaintiff. Sanchez stated:

- He did not see a weapon
- Did not see anything that appeared to be a weapon
- Did not see plaintiff threaten anyone
- Did not observe plaintiff engage in any conduct deemed threatening
- Was not personally in fear for his life[9]

At the time Officer Powell shot plaintiff in the back, Powell suspected that the plaintiff could be armed. However, at no time during the encounter did Powell see a gun nor did plaintiff attempt to fully turn toward Powell in a manner consistent with a person armed with a hand gun. During depositions Powell stated:

- He did not see anything on Young that indicated he had a gun[10]
- Did not see anything in Young's hand[11]

---

[8] Sanchez Deposition Page 10
[9] Sanchez Deposition Page 13
[10] Powell Deposition Page 43
[11] Powell Deposition Page 43

5

There is no disputing that defendant repeatedly told plaintiff to remove his hands from his pockets. Although he did not comply immediately, he did follow their order and removed his hands. His back was turned while removing his hands; he was shot in the back by Powell. During depositions Powell was asked:

Q. Were you taught it's okay to shoot someone when someone says take your hands out of your pockets and the person does it?

A. You said was I taught—was I-no. [12]

Further in the deposition Powell clearly states that plaintiff was not compliant and that is why I shot him. [13]

Plaintiff, by all accounts, was following the orders of the police when he removed his hands from his pocket. As a result of following police commands, plaintiff was shot in the back. If a person in contact with police is not totally compliant, that is not a justification to shoot them.

The Metropolitan Police Department General Order on the Use of Force states:

6A DCMR Section 207.2 provides, among other things, that no member shall discharge a firearm in the performance of police duties except to defend himself or herself or another from an attack which the officer has reasonable cause to believe could result in death or serious bodily injury.[iv]

Based on my review of this matter, at no time was Officer Powell or any other member of the MPD under attack. To the contrary, plaintiff was following defendants' orders when they shot him in the back; defendants are unable to articulate any aggressive or furtive movement which would lead a reasonable officer in Officer Powell's position to believe that he was justified in shooting plaintiff in the back.

The lone civilian witness to the shooting, Dequan White, supports plaintiff's position that the shooting was unreasonable, excessive, and a violation of his 4th amendment rights.

---

[12] Powell Deposition Page 41
[13] Powell Deposition Page 42

Mr. White confirms that defendant did order plaintiff to remove his hands from his pockets and move on. Plaintiff complied, however he then placed his hands back into his pockets and continued to walk away. Defendants continued to order plaintiff to remove his hands at which time plaintiff looked back and saw the gun. White then stated that plaintiff took his hands out of his pocket and his hands were on the way up when the gun went off. [14]

Based on Mr. White's statement to police, plaintiff never posed any threat or made any furtive movement that would have caused a reasonable police officer to shoot plaintiff one time in the back.

Following the shooting, the matter was investigated by IAD. The case was assigned to Sgt. Charles Whittington. Sgt. Whittington ruled the shooting justified with tactical improvement opportunity.

The matter was then forwarded to the Use of Force Review Board (UFRB) which ruled that the shooting was not justified. The UFRB members were: Assistant Chief Robert Alder- 27 years of service, Inspector Brian Grogan- 26 years of service, Assistant Chief Robert Conter- 24 years of service, Captain Antonio Charland- 26 years of service, Commander Daniel Hickson- 33 years of service. In total, the UFRB had a total of 133 years of police experience and unanimously decided the shooting of plaintiff was unjustified. Relevant reasons they gave for their finding:

### A/Chief Alder

- Powell did not see plaintiff's hands and did not see a weapon and therefore plaintiff was not a threat
- It is difficult for a person to be a threat if his back is to you
- Disagreed with Sgt. Riley assessment, the same assessment Whittington used to justify the shooting
- If you ask someone to take their hands out of the pockets you need to be prepared for it even if they jerk

### Inspector Brian Grogan

---

[14] Final Investigation report submitted by IAD page 13

- Shooting was not justified because plaintiff never faced Powell
- Plaintiff did at first take his hands out of his pocket which showed he did not have a weapon
- Viewed Sgt. Riley's review and did not agree

### A/Chief Conte

- Plaintiff was doing as told by taking his hands out of his pocket
- Disagreed with Sgt. Riley's assessment
- Person who was shot did what he was asked to do, take his hands out of his pocket.
- Stated we deal with people who are noncompliant all time, but that does not mean we shoot them

### Captain Antonio Charland

- Did not believe an imminent threat existed
- Plaintiff was walking away from officers when shot
- At no time was there anything associated with a threat that would cause the officer to use deadly force
- Disagreed with Sgt. Riley's assessment
- Did not believe there was an attack or perceived attack

### Commander Daniel Hickson

- Plaintiff was told to take his hands out of his pocket and when he did he was shot
- Powell stated in his statement he never saw plaintiff's hand
- Disagreed with Sgt. Riley's assessment
- Recall this being the first time the UFRB did not concur with a justified finding

The UFRB unanimously found the shooting to be not justified. Having reviewed their reasoning and applying my training, education, experience, and knowledge of use of force I concur with their decision. It should be noted that all five members did not agree with Sgt. Riley's assessment, which is the assessment that Sgt. Whittington used to rule the shooting justified. If

8

you disregard Sgt. Riley's assessment then as per Sgt. Whittington, he too, would have ruled the shooting not justified.

The matter was than referred to the Adverse Action Panel with reversed the UFRB and found the shooting justified. The AAP members were Commander David Taylor, Commander Leslie Parsons and Captain Renato Caldwell.

During the Adverse Action Panel Hearing, Commander Daniel Hickson of the UFRB testified that while he reviewed the IAD he was surprised that Sgt. Whittington ruled the shooting justified. Hickson stated that the IAD report read as if the shooting was unjustified. He then spoke with Whittington who stated that he believed the shooting was unjustified until he spoke with Sergeant Riley.[15] Sgt. Riley serves as the department's range instructor and use of force instructor. During Sgt. Riley's testimony before the AAP he stated he incorporates four points when reviewing a police shooting:

- The law
- Department Policies
- Tactics
- Officer's experience and common sense

**As per the law**: The law is clear that any use of force must be reasonable. In this matter it is my opinion, which I base on my training, experience, education, knowledge of police policy and procedures, eye witness accounts, findings of the Use of Force Review Board UFRB that this shooting was not reasonable and violated case law. The two cases Riley relied on were Graham v. Conner and Tennessee v. Garner. I have already addressed Graham and my opinions as to why Powell violated the Graham principle on reasonableness. In Tennessee v. Garner the court stated:

*Held:*

---

[15] AAP Report Page 10

9

The Tennessee statute is unconstitutional insofar as it authorizes the use of deadly force against, as in this case, an apparently unarmed, nondangerous fleeing suspect; such force may not be used unless necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. Pp. 7-22. [471 U.S. 1, 2]

(a) Apprehension by the use of deadly force is a seizure subject to the Fourth Amendment's reasonableness requirement. To determine whether such a seizure is reasonable, the extent of the intrusion on the suspect's rights under that Amendment must be balanced against the governmental interests in effective law enforcement. This balancing process demonstrates that, notwithstanding probable cause to seize a suspect, an officer may not always do so by killing him. The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. Pp. 7-12.

(b) The Fourth Amendment, for purposes of this case, should not be construed in light of the common-law rule allowing the use of whatever force is necessary to effect the arrest of a fleeing felon. Changes in the legal and technological context mean that that rule is distorted almost beyond recognition when literally applied. Whereas felonies were formerly capital crimes, few are now, or can be, and many crimes classified as misdemeanors, or nonexistent, at common law are now felonies. Also, the common-law rule developed at a time when weapons were rudimentary. And, in light of the varied rules adopted in the States indicating a long-term movement away from the common-law rule, particularly in the police departments themselves, that rule is a dubious indicium of the constitutionality of the Tennessee statute. There is no indication that holding a police practice such as that authorized by the statute unreasonable will severely hamper effective law enforcement. Pp. 12-20.

(c) While burglary is a serious crime, the officer in this case could not reasonably have believed that the suspect - young, slight, and unarmed - posed any threat. Nor does the fact that an unarmed suspect has broken into a dwelling at night automatically mean he is dangerous. Pp. 20-22.$^v$

There is no disputing that plaintiff was walking away from police, even if one was to consider his actions fleeing (or as Powell stated non-compliant), it still does not rise to the level of force

10

used by Powell. Additionally, it is my opinion that no probable cause existed to believe plaintiff was a threat. It is further my opinion that no probable cause existed to arrest plaintiff or detain him for a prolonged period of time. Additionally, the arrest and detention of plaintiff was illegal and nothing more than an attempt by defendant to justify their unconstitutional shooting of plaintiff in the back.

**PROBABLE CAUSE is defined as:**

Probable cause for an arrest exists when the facts and circumstances within the officer's knowledge are sufficient to permit a prudent person, or one of a reasonable caution, to conclude that there is a **fair probability** that a criminal offense is being or has been committed, and the suspect is or was a criminal participant. *Illinois v. Gates,* 462 U.S., 213, 230-31, 238, 103 S.Ct. 2317, 2328, 2332 (1983).

It has been described

as a **"well-grounded suspicion or belief."**

It is a **"practical, non-technical probability."**

**State v. Dangerfield,** 171 N.J. 446 (2002)[vi]

**Schneider v. Simonini,** 163 N.J. 336 (2002)


At the time of the stop and ultimate seizure of plaintiff, the only information defendants had was an unconfirmed report by plaintiff's girlfriend that he was armed and had made threats to law enforcement. Based on the reports I have read, it appears even defendants did not show much concern with the girlfriend's statements. The only report filed was listed as a family dispute. Defendants never took a statement from the girlfriend or made any attempt to investigate what the exact threat to law enforcement was.

"Sgt. Riley testified that he wrote his opinion on the shooting based on the following: The officers approached someone who is always known to be armed to carry a gun and carries the

11

weapon in his waist band".[16] It is unclear where Sgt. Riley received said information. Having read numerous reports, I have yet to read anything stating that police knew plaintiff always carried a gun and carried it in his waistband. Sgt. Riley's statement, which influenced Sgt. Whittington's decision of finding the shooting justified, does not appear to be factual.

As per Allen's deposition:

- He did not know plaintiff prior to this incident[17]
- Never seen him before[18]
- Never spoke to him before[19]

As per Powell's deposition

Never seen plaintiff prior to the date of the shooting[20]

Never talked to plaintiff prior to the date of the shooting[21]

Never saw a picture of plaintiff[22]

Since the two primary officers involved in this matter had no prior contact with plaintiff, it is unclear how Sgt. Riley could come to the following conclusion which became part of the record: "Officers approached someone who is always known to be armed to carry a gun and carries the weapon in his waist band". It is unclear what effect this statement had on the Adverse Action Panel's final decision.

**As per Department Policies**: The policy states: 6A DCMR Section 207.2 provides, among other things, that no member shall discharge a firearm in the performance of police duties except to

---

[16] Page 13 of Adverse Action Panel report
[17] Allen Deposition Page 8
[18] Allen Deposition Page 8
[19] Allen Deposition Page 8
[20] Powell Deposition Page 67
[21] Powell Deposition Page 8
[22] Powell Deposition Page 8

defend himself or herself or another from an attack which the officer has reasonable cause to believe could result in death or serious bodily injury.[vii]

Having reviewed this matter, it is my opinion and the opinion of the UFRB that defendants failed to articulate any threat of attack and therefore the shooting violated department policy.

**As per Tactics:** Regardless of whether proper or improper tactics were used, officers are always required to use reasonable force. The issue of tactics is not relevant to whether or not reasonable force was used by Powell.

**As per officer's experience and common sense**: Experience and common sense are separate from whether or not force was reasonable or not.

If one were to disregard Sgt. Riley's reasoning, then as per Sgt. Whittington, the shooting would not have been justified. Based on my review of this matter, Sgt. Whittington placed too much value on Sgt. Riley's opinion and disregarded inconsistencies in the officer's statement, the statement of an eyewitness and the fact that plaintiff was shot in the back and was never facing Powell when Powell shot him.

As per my review of this matter, it is my opinion that the two main reasons Sgt. Riley gave for finding the shooting justified- Law and Department Policy, were violated and do not support the shooting as justified. The law requires the use of force to be reasonable; in this matter, it was not. The department policy specifies that there has to be a threat of attack. Based on the documents I reviewed, plaintiff never verbally or physically attempted to attack any officer.

After being shot in the back by Officer Powell, plaintiff was charged with Assault on a Police Officer (APO) DC Code 22 Sec 405. As per the code:

**The DC Code: § 22-405 Assault on member of police force, campus or university special police, or fire department.**

Index → 22 Criminal Offenses and Penalties. (Refs & Annos)

a

    For the purposes of this section, the term "law enforcement officer" means any officer or member of any police force operating and authorized to act in the District of Columbia,

13

    including any reserve officer or designated civilian employee of the Metropolitan Police Department, any licensed special police officer, any officer or member of any fire department operating in the District of Columbia, any officer or employee of any penal or correctional institution of the District of Columbia, any officer or employee of the government of the District of Columbia charged with the supervision of juveniles being confined pursuant to law in any facility of the District of Columbia regardless of whether such institution or facility is located within the District, any investigator or code inspector employed by the government of the District of Columbia, or any officer or employee of the Department of Youth Rehabilitation Services, Court Services and Offender Supervision Agency, the Social Services Division of the Superior Court, or Pretrial Services Agency charged with intake, assessment, or community supervision.

b

    Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned not more than 180 days or fined not more than $1,000, or both.

c

    A person who violates subsection (b) of this section and causes significant bodily injury to the law enforcement officer, or commits a violent act that creates a grave risk of causing significant bodily injury to the officer, shall be guilty of a felony and, upon conviction, shall be imprisoned not more than 10 years or fined not more than $10,000, or both.

d

    It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such an arrest is made by an individual he or she has reason to believe is a law enforcement officer, whether or not such arrest is lawful.

Based on all depositions I have read, neither Officer Allen nor Powell filed or were aware of any charges being filed against plaintiff. Since neither officer filed charges, it is unclear as to why charges were filed against plaintiff and what the probable cause was. Based on my review of this

14

matter, no assault occurred and the only act that Plaintiff engaged in was not removing his hands fast enough for defendants. Absent probable cause, the arrest of plaintiff was illegal and violated his 4th Amendment right to be free of unlawful seizure.

As per the arrest report I reviewed, the arresting officer was Robert Rikard III; the arrest location was the scene of the shooting at 3218 22nd Street SE. M.O. was weapons, hangouts, habits, and instruments. (See attachment 3 of IA file) Since no weapon was recovered and plaintiff never touched any officer, weapons do not apply. Hangouts and habits are not mentioned in the criminal code under assault and it is unclear how those would apply. Since no instruments were used, instruments do not apply. Therefore, based on defendants' own arrest report they lacked probable cause for the arrest and false charge. It is also unclear who Officer Rikard is and what his involvement in this matter is.

Since defendants lacked probable cause to charge and arrest plaintiff for assault and since it is clear that plaintiff did not assault anyone, it is my opinion that defendants fabricated the charge in an effort to justify the shooting. By arresting and charging plaintiff who was a victim of excessive use of police force defendants acted with malice in an effort to mitigate their wrongdoing.

## V. Conclusion

Having reviewed all the documents supplied to me by counsel for the plaintiff it is my opinion, which I base on my training, education, experience, and knowledge of police policy and procedures-- to include the use of force, defendants violated plaintiff's 4th Amendment rights when they unjustifiably shot him in the back. They further violated plaintiff's Constitutional rights when they falsely arrested and charged plaintiff with assault on a police officer. Knowing they had no probable cause, in an effort to justify their actions, defendants maliciously charged plaintiff with assault. By all accounts, plaintiff never threatened any officer or made any type of movement which would lead a reasonable officer to shoot him in the back. Plaintiff was shot simply because at first, he would not remove his hands from his pockets; when he followed the officers' commands, Powell shot him in the back.

Officer Sanchez stated during depositions:

He (Officer Allen) was trying to stop him and telling him to show his hands or something along those lines. Mr. Young never stopped and never showed his hands and never cooperated with his orders.

Q. So what happened?

A. At that point if I recall, Officer Powell was walking- following him left to right. I am on my motorcycle. I stopped some distance from -from the subject, and Officer Powell just happened to stop -stop right in front of my line of sight. And Officer Powell's weapon was drawn and as soon as Mr. -Officer Powell stopped right in front of my line of sight, I heard a gunshot go off. [23]

During Officer Powell's deposition, he was asked:

Q. Was he (Young) doing anything that was assaultive or threat—threatening that day?

A. Yes, he was.

Q. What?

A. He was refuse—he was not listening to our orders. then, before I shot him he took his hands out of his pocket and put it inside his jacket. [24]

Based on the officers' own testimony, plaintiff was shot simply for refusing orders in a timely fashion. After unjustifiably shooting plaintiff in the back, in an attempt to coverup their wrong-doing, defendants (lacking probable cause) falsely charged plaintiff with assault on a police officer.

Based on all the documents I have reviewed, defendants have failed to articulate any reasonable justification for shooting plaintiff in the back. No reasonable officer in the same position Powell found himself in would have engaged in deadly force against an unarmed citizen. Officer Powell's action of shooting plaintiff was not justified and violated plaintiff's 4th Amendment rights to be free of unlawful search and seizures. Absent Sgt. Riley's review, Sgt. Whittington

---

[23] Sanchez Deposition Pages 9-10
[24] Powell Deposition Page 47

was correct in his initial assessment that the shooting was not justified. The UFRB, with over 133 years of combined experience, were also correct in their finding that the shooting was not justified.

Defendants claim that plaintiff voiced to his girlfriend threats against law enforcement. Having reviewed the report filed on December 26, 2013 the threat again police does not appear to be attributed to the girlfriend. If in fact the girlfriend did not make the statement to defendants, then it is further my opinion that defendants purposely misstated the facts in order to justify an unjustifiable shooting. If the defendants did make up the threat their actions amount to police misconduct for the purposes of covering up an excessive use of force.

All of my opinions have been made within a reasonable degree of certainty regarding police policy and procedures. All of the violations of police policy and procedure as outlined in this report are direct and proximate causes of the unlawful actions taken against plaintiffs at the hands of defendants.

Respectfully Submitted,

Joseph J. Blaettler

---

[i] Quick Reference Legal Guide For Law Enforcement, Law Enforcement Liability and Risk Management Institute
[ii] MPD General Order on Use of Force
[iii] NYPD Patrol Guide
[iv] Metropolitan Police Department General Order on the Use of Force
[v] Tennessee v Garner
[vi] Larry Holtz Search and Seizure Updates
[vii] Metropolitan Police Department General Order on the Use of Force